UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ALAN VIRGIL BRUMFIELD     DOCKET NO. 15-CV-1883; SEC. P

VERSUS     JUDGE DRELL

NATCHITOCHES PARISH DETENTION     MAGISTRATE JUDGE KIRK
CENTER, ET AL.

## REPORT AND RECOMMENDATION

Pro se Plaintiff Alan Virgil Brumfield, proceeding *in forma pauperis*, filed the instant civil rights complaint [Doc. #5] and amended complaint [Doc. #12] pursuant to 42 U.S.C. §1983. Plaintiff is a pretrial detainee incarcerated at the Natchitoches Parish Detention Center. He named the Natchitoches Parish Detention Center as the only defendant. He complains that he was illegally housed with a Louisiana Department of Corrections inmate that attacked Plaintiff, and that he was denied adequate diagnostic testing following the attack. Plaintiff seeks (1) compensatory damages for being incarcerated with a DOC inmate and (2) injunctive relief in the form of an order directing the NPDC to schedule "proper diagnostic testing" of his injuries and to provide Plaintiff with a copy of the future test results.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Factual Allegations

According to the Natchitoches Parish Sheriff's Office inmate

listings[1], Plaintiff has been in custody since November 26, 2013, on charges of home invasion, second degree kidnaping, and first degree murder. He alleges that he was assigned to a dorm that also houses convicted offenders in the custody of the Department of Corrections. Plaintiff apparently had no issues in that dorm from 2013 until March 16, 2015, at which time he became involved in a verbal dispute with a DOC inmate. [Doc. #1, p.3] Lieutenant Milliage heard Plaintiff and the other inmate arguing. Milliage entered the dorm and walked Plaintiff back to his bunk. Approximately three minutes after the officer left the dorm, the other inmate physically attacked Plaintiff, knocking Plaintiff to the concrete. [Doc. #1, p.5] Plaintiff states that he immediately informed officers that he had injured his back in the attack.

Plaintiff was taken to the nurse's station and examined by nurse Helaire. He was provided ibuprofen. [Doc. #12, p.4]

The following day, on March 17, 2015, Plaintiff was examined by Nurse Practitioner Meg Fitzhugh. A cortisone injection was prescribed by Fitzhugh and administered by Helaire.

Plaintiff states that he experienced severe back pain in his lower and middle back, as well as numbness on his right side. [Doc. #12, p.4] He alleges that he has submitted biweekly or weekly sick call requests since March 2015 complaining of persistent back pain. He has been administered Aleve and ibuprofen for pain. He states

---

[1] http://www.npsheriff.org/InmateListing.aspx

that sometimes his sick calls are ignored [Doc. #12, p.4], but he has not specified any specific instances on which this occurred.

On March 18, 2015, Plaintiff was placed in a lockdown cell with a DOC inmate, without incident. [Doc. #12, p.3]

On March 20, 2015, Plaintiff states that he was moved to another cell with another DOC inmate, again, without incident. [Doc. #12, p.3]

Plaintiff alleges that, on July 30, 2015, Fitzhugh prescribed steroids without examining Plaintiff. Plaintiff alleges that he did not receive any relief after completing the medication. [Doc. #12, p.5]

In his amended complaint, Plaintiff claims that he is being denied access to the court. [Doc. #12, p.5] He complains that he has not received assistance from inmate counsel, and he does not receive adequate time in the law library.

Plaintiff asks that NPDC be ordered to schedule "proper" diagnostic testing for his back injury. He asks that NPDC be ordered to provide Plaintiff with copies of whatever tests are ordered. He asks that the rap sheet and prison record of the inmate that attacked Plaintiff be subpoenaed as evidence. He seeks compensation for illegally incarcerating Plaintiff with DOC inmates.

### *Law and Analysis*

**1.    NPDC as defendant**

To the extent that Plaintiff names the Natchitoches Parish Detention Center as a defendant, his claim should be dismissed. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether detention centers are entities with the capacity to sue or be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." A parish prison facility is not a juridical person capable of being sued. A jail is "not an entity, but a building." See Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D.La. 1998).

**2.    Failure to Protect**

The Eighth Amendment's prohibition against "cruel and unusual punishment" protects the rights of convicted prisoners; the rights of pre-trial detainees, such as the plaintiff, are protected by the "due process clause" of the Fourteenth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996)(citations omitted). Allegations of "failure to protect" and inadequate medical care are evaluated under a "deliberate indifference" standard, whether alleged under the Fourteenth Amendment by pre-trial detainees, or under the Eighth Amendment by convicted prisoners. See Hare, 74 F.3d at 640-43.

Thus, a pre-trial detainee's right to be protected from violence is measured by the standard of "subjective deliberate indifference" as enunciated by the Supreme Court in <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Under the "subjective deliberate indifference" standard discussed in <u>Farmer</u>, a prison official cannot liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." In order to prevail on such claims, a civil rights plaintiff must allege and ultimately establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) that they actually drew the inference. <u>Farmer</u>, 511 U.S. at 837. Negligent inaction can never support a failure to protect claim. <u>Farmer</u>, 511 U.S. at 835; <u>Hare</u>, 74 F.3d at 642.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. See <u>Johnson v. Treen</u>, 759 F.2d 1236, 1237 (5th Cir. 1985). In <u>Smith v. Wade</u>, 461 U.S. 30, 39 n. 8 (1983), the Court approved the following definition of wanton – "'Wanton means reckless-without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a

5

duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Plaintiff has not alleged deliberate indifference to his safety. He specifically claimed that the defendants were guilty of negligence in leaving him in the dorm with a "belligerent" inmate. Plaintiff complains that the attack took place because he was housed with DOC inmates. Plaintiff had resided in that dorm for approximately a year and a half without incident. Additionally, he was placed in lockdown cells with DOC inmates on other occasions, all without incident. He has not alleged that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.

Moreover, the housing of convicted inmates with pretrial detainees is not per se unconstitutional. The classification of inmates is an administrative function of the prison. See Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981). Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir.1990). "Inmates have

6

a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir.1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir.1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir.2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that

7

imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Plaintiff has not provided allegations indicating that housing him with DOC inmates was unconstitutional.

3. **Diagnostic Testing**

Plaintiff claims that he is being denied adequate medical care, and he requests an order directing NPDC to provide him with diagnostic testing and copies of the test results. Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" to act or refrain from acting in a certain manner is an extraordinary remedy. See Morrow v. Harwell, 768 F.2d 619, 627 (5th Cir.1985). The movant must unequivocally show the need for its issuance. Allied Mktg. Group, Inc. v. CDL Mktg., Inc., 878 F.2d 806, 808 (5th Cir. 1989), appeal after remand, 915 F.2d 1567 (5th Cir.1990). Plaintiff has not demonstrated that such an extraordinary remedy is appropriate.

Additionally, Plaintiff has received Aleve, ibuprofen, and steroids for his back pain. Thus, his complaints have not been ignored. His belief that x-rays are necessary is a disagreement with diagnosis and treatment, which does not state a constitutional claim. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir.1993). Plaintiff has not alleged the subjective intent to cause harm by the defendants in not ordering x-rays.

8

### 4. Access to Courts

Plaintiff complains that he is being denied access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoner's] convictions or conditions of confinement." <u>Id.</u> (citing <u>Lewis v. Casey</u>, 518 U.S. 43, 351 (1996)). Additionally, to prevail on an access-to-the-court claim, a prisoner must demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999); <u>Ruiz v. United States</u>, 160 F.3d 273, 275 (5th Cir. 1998).

Plaintiff has not provided allegations indicating that he has been denied a reasonable opportunity to file any non-frivolous legal claims. Nor has he alleged that he suffered an actual injury stemming from inadequate legal assistance or access to the library.

### 5. Discrimination

After Plaintiff was attacked, he was placed in lockdown cell for a period of time. He claims that, although it was purportedly for his protection, his placement on lockdown was really an act of racial discrimination because he is white and the majority of officer at NPDC are black.

"Inmates have the constitutional right to be free from racial discrimination." Bentley v. Beck, 625 F.2d 70, 71 (5th Cir. 1980). "To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination." McKnight v. Eason, 227 Fed. Appx. 356, 2007 WL 1334184, at *1 (5th Cir. 2007) (citation omitted); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007). "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination. Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D.Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); Pedraza v. Meyer, 919 F.2d 317, 318 n. 1 (5th Cir. 1990)). Plaintiff has presented only vague and conclusory allegations that he was temporarily housed in lockdown following his attack because of racial discrimination.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 10th day of November, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE